ship. Langton v. Horton, 5 Beav. 9; and I do not doubt the soundness of that ruling. It is not commonly called freight, and it would be an unwarrantable stretch of construction to bring it within that word in the act. In The Dundee it was taken for granted in both courts by the learned and eminent judges who delivered the judgments, that there would be no freight in that case, even under the second section of the statute, which puts owners who carry their own goods upon an exact equality with those who earn freight from carrying the goods of others. They thought the point a clear one, and used it as an argument for including the outfit, that there was no freight in such a voyage. So far as the proportion of the oil and bone which is the share of the officers and crew is concerned, the owners are not benefited by its being carried to a port of delivery; and, on the whole, I think that there is no freight pending in a whaling or fishing voyage in the sense of the statute. If there should be held to be a constructive freight, it would be almost impossible to assess it, because in many of these voyages there is no place from which it can be reckoned. The whales are caught at various parts of the ocean, hundreds or thousands of miles apart, at various times during a period of from one to five• years, and there would be in most cases no means of arriving at any thing like a fair estimate of a freight which never in fact exists.

I affirm the assessor's report as to all matters of fact found by him, and decide: (1) The Helen Mar is to be valued immediately after the collision, instead of before it, (2) with her equipment, (3) with no allowance for freight.

[On appeal to the circuit court, this decree was affirmed so far as it held both vessels in fault, and the aggregate damages to be divided, and reversed so far as it included in the valuation of the Helen Mar her whaling outfits, as a basis for determining the extent of the liability of her owners. Case No. 13,695.]

ONTARIO The (FLANNERY v.). See Case No. 4,856.

ONTARIO (SMITH v.). See Cases Nos. 13,-085 and 13,086.

---

## Case No. 10,544.

### The ONYX.

[Cited in Treat v. The Rainbow, Case No. 14,161. Nowhere reported; opinion not now accessible.]

---

## Case No. 10,545.

### OOLOGAARDT v. The ANNA.

[12 Int. Rev. Rec. 130; 9 Am. Law Reg. (N. S.) 475.]

District Court, D. Rhode Island. 1870.

BOTTOMRY—SUBSEQUENT GENERAL AVERAGE LOSS.

1. Where a vessel is libelled and sold on a bottomry bond, the fund in court is not subject, as against the bondholder, to any claim for a general average loss subsequent to the date of the bond.

2. Whether the admiralty has jurisdiction of a suit in rem for a general average loss, quære?

This was a petition by T. & J. Coggeshall, of Newport, against the proceeds of the sale of the brig, on account of general average expenses. On the 24th of February, 1870, the firm of Oologaardt & Bruinier, of Amsterdam, in the kingdom of the Netherlands, exhibited in this court their libel against the brig Anna, of Maitland, Nova Scotia, Robert Dart, master, then lying in the port of Providence in this district, articulately propounding in substance, that by virtue of a certain instrument of hypothecation and bottomry, made by said Dart, as master, on the 25th of November, 1869, in the parish of Helden, in the province of North Holland, in the kingdom of the Netherlands, they were entitled to a decree of this court against the said brig for the sum of $2,195.14 in gold,— and praying process in admiralty against said vessel, to compel or secure payment of said sum, with incidental costs and charges. A decree of sale was entered, without opposition, on the 2d of March, 1870, when, also, the claim of the libellants for the sum aforesaid was ascertained and allowed, and on the 19th of March the net proceeds of the sale ($2,300, less $98.94, costs of sale), $2,-201.06, were lodged in the registry. Out of this fund, the libellants assenting, on the 21st of March, were paid to petitioning seamen and material men, the gross sum of $159.42, leaving in the registry for the payment of taxable costs and the libellant's claim as aforesaid, the sum of $1,541.54. Out of this, the said Capt. Dart, although a part owner of the vessel, by petition, prayed payment of, his wages in arrears, amounting to $270, grounding his claim upon section 52, St. 7 & 8 Vict., and notice was given to the court and the libellants that yet another claim upon the fund, for salvage or of the nature of a salvage claim, would be preferred in the course of a few days. On the 26th of March the petition of the captain was dismissed with costs, and in pursuance of notice as aforesaid, the petition of T. & J. Coggeshall claiming payment of the sum of $218.67 was filed.

Payne & Tobey, for petition.
Browne & Van Slyck, for libellants.

KNOWLES, District Judge. The claim is in the name of T. & J. Coggeshall, but it appears from the testimony that, as regards this matter, we may view John Coggeshall as composing the firm. He alone acted, spoke and wrote, and he alone testifies in support of the claim. In fact, the only evidence submitted is his deposition with its exhibits, A and B,—the first a document entitled "General Average Statement," signed "Bradford & Folger, Adjusters of M. Losses"; the second an account of T. & J. Coggeshall